## NEW YORK OYER AND TERMINER.

### SEPTEMBER, 1851.

Before EDMONDS, Justice, and two aldermen.

---

### THE PEOPLE v. JAMES SULLIVAN.

The design to effect death that will cause a homicide to be murder.

An opinion of a juror so far formed and fixed as to require evidence to remove it, disqualifies him, and is good ground of challenge for principal cause.

INDICTMENT for murder.

On impaneling the jury, a juror was challenged by the prisoner to the favor, for bias, and after being examined on the trial of that challenge, it was withdrawn.

He was then challenged, by the district attorney, for principal cause, for having formed and expressed an opinion.

On the trial of that challenge it appeared that on the former challenge he had said that he had formed an opinion in the case from reading the newspaper account of it, but it was not so formed that it could not be removed.

The court, before whom this challenge was tried, held that an opinion so far formed and fixed as to require evidence to remove it, disqualified the juror, and he was set aside.

On the trial it appeared that the prisoner was an Irish laborer, and was in the habit of getting drunk and quarreling with his wife. They lived in the same tenement house with several other families.

On a Sunday, about noon, prisoner and his wife got into a quarrel, when she ran out of the room and down stairs, and he began breaking the crockery and furniture in his room. He struck his wife, and another woman who interfered to stop his violence, and drew blood from both. Smith, the deceased, who lived in the same house, attracted by the noise, went to

the prisoner's room and remonstrated with him. The prisoner said they were his own things and he had a right to do as he pleased with them. Smith then said he must stop, for it was a shame to be making such a noise on Sunday, and he entered the room and seized hold of the prisoner. A scuffle ensued, in the course of which the prisoner's wife, and a female who lived in her family, joined in the attack on Smith, got the mastery of him, and beat him until others interfered and parted them. Smith then went down stairs, and he was seen to be bloody, and his clothes very disordered. He went up stairs toward his own apartment, apparently to fix his clothes, and met the prisoner at the head of the stairs. He almost immediately cried out he was stabbed, and turned and ran down stairs. He bled to death in about ten minutes, having received three stabs.

The prisoner concealed himself in his room, where he was arrested, no one being in the room but himself. On searching the room some twenty or thirty pocket-knives were found in a trunk, which was easy of access, and a bloody rag was found, as if it had been used to wipe off blood from a knife. The prisoner said he had used it to wipe off blood from it, and on being asked how he could kill the man, answered, "you would have done it, too, under like circumstances."

His counsel insisted the offense was only manslaughter, because there was no premeditated design to kill, but only a killing in an affray, in the heat of passion.

*The Judge* charged the jury as to the design to effect death, the same as he did at the same term in *Clark's case.*

The prisoner was convicted of murder.

September 27, 1851, the prisoner was put to the bar for sentence, with three others convicted of homicide.

The district attorney rose and said: " It is now my duty to call for the judgment of the court upon James Sullivan."

The People v. James Sullivan.

### SENTENCE OF DEATH UPON SULLIVAN.

The judge, addressing Sullivan, said: "And now, the last act in the painful spectacle which is this day presented, is upon us. It is, indeed, a melancholy spectacle. Eight persons have been arraigned at this term for murder. Five of you have been convicted, and upon three of you the last punishment known to our law is denounced. All of you owe your crimes to your indulgence in the ruinous habit of intoxication. All of you are foreigners, who have sought our soil, that you might enjoy the benefit of our free institutions; and in return for the protection which our laws so freely offer to you, you violate them without scruple, and apparently without remorse, even unto the shedding of blood. The preservation of peace, and good order among us, and the security of human life, admonish us, in a peculiar manner, under such circumstances, sternly and rigidly to enforce the law upon you. You, Sullivan, in particular, can entertain no well grounded hope of any remission of your sentence. In your fit of intoxication and anger, without provocation, you assaulted your wife, and drove her from your presence. You endangered your children, and disturbed the peace and quiet of others, whose misfortune it was to live near you. Your victim interfered no farther than was necessary, or than he had a right to do, to put a stop to your disorderly and unlawful behavior. You, who were alone to blame, thus far — your wife and your female domestic, who had alike fled with your children to others for protection against your violence — immediately assaulted him, and it was with difficulty, and only by timely assistance, that he was able to escape your united attack. You then armed yourself, and waylaid him; and when he approached you, for aught you knew, with a most peaceful purpose, you stabbed him, not once only, but twice and thrice; and you finished the picture by attempting, on your trial, to fasten the consequences of your crime upon your wife, that you might save the life which has been forfeited to the offended laws of the country. Under these circumstances, I bid you prepare for the death which speedily awaits you, and that you well and profitably use the time that may be left you. The sentence of the court is, that on Friday, the 21st day of November next, you be

hung by the neck until you be dead, and may God have mercy upon you.

The prisoner fervently responded, Amen.

The sheriff stood beside Sullivan, and the death warrant, as in the other cases, was read and handed to him.

The prisoner's wife, who was present with an infant in her arms, wept audibly during the passing of the sentence, and the solemn ceremony of the reading of the death warrant.